Thank you, Mr. Caber. You may proceed. Good morning, Your Honors. May it please the Court. Justice, as you've read from the briefs... Could you speak up a little louder? Thank you. Never want to talk too loud. As you've read from the briefs, Ms. Wisner is here for primarily one reason, and that has to do with the mental state required by the people to demonstrate beyond a reasonable doubt the three counts of conviction in Counts 7, 8, and 9 in the information regarding this matter. Ms. Wisner contends, as we've stated, and I'm not going to rehash everything in the brief, but that this was a situation where Ms. Wisner argues that the trial court split the dog. It did not find that the people had proven beyond a reasonable doubt any of the other nine counts and set forth its reasoning in a detailed record once it pronounced the three counts of conviction. The circumstances here are unfortunate. There is a large gray area between conduct that rises to no level of culpability and conduct that rises to the level of criminal liability. Let me ask you this. You say in your brief that in order to prove the defendant guilty of Counts 7 through 9, the people were required to prove that the defendant consciously weighed the evidence and the likelihood that something adverse would happen with the minor as a result of the nutritional status that nevertheless persisted. You don't cite any authority for that proposition. Where is there a case that says in order to be consciously aware of the fact, you have to weigh the evidence? Well, consciousness implies that there is knowledge and there is a cause and effect relationship between what is being observed and some sort of mechanism causing the thing which is being observed. In other words, the very essence of all of the expert testimony in Ms. Wisner's case stemmed from the fact and the court even in its holding, which it was not required to pronounce but did so nevertheless, there has to be a cause and effect relationship in order to have any sort of mens rea for the commission of any criminal offense. Didn't the defendant's own social media posts clearly reflect that she knew that S was in danger? The observations were that he was in danger, yes. And anybody who looks at the record, there's no contesting that anybody who looks at the record observes symptoms of a child who is having medical issues. We're not contesting that. And the state frankly correctly points that out in their response brief. These symptoms that were being observed, however, even by the most trained medical professionals, board certified specialists in their fields, couldn't find specific reasons for and therefore couldn't find specific treatments that were found to be the cause or the root of the child's problems, meaning the symptoms that were being observed. So I think when we talk about consciousness, and it's a good question, we have to, I think it's almost inherent. Your Honor raises a good point. There's no authority that's cited for it. But consciousness required to rise to the level of a culpable mental state, even one as low as recklessness, requires that processing of a cause and effect relationship between the observed symptoms and what could be causing it. Are you saying that there's different standards depending on whether it's an expert or whether it's a non-expert or whether it's a stupid person or an ignorant person or an intelligent person or a reasonable person? You're saying whether it's subjective or objective? Is that the question? Well, you said cause and effect. And the way in which you said it, you said it relates to mens rea. I always thought that cause and effect related to life, a timeline, that things are supposed to follow as a natural course, things that happened before. And so your statement, I won't say confused me, but it didn't clarify much because to me cause and effect is so general across the board. You didn't have to say mens rea. So I'm curious as to why you said mens rea. Well, the act is in Counts 7, 8, and 9, the counts of conviction, are failure to provide medical care, failure to provide nutrition, and then the conjunctive, which is both, which is why the judge found Ms. Wisner guilty in Count 9 because he had found her guilty on 7 and 8. So the acts that are set forth in the information are clear. So then it leaves us with the mental state that those acts that were done, so even if, and were not, but even if we were to concede, and I promise I'm trying to get to an answer that satisfies your honor, even if we were to concede that the acts of the failure to provide nutrition, failure to provide medical care, had been, Ms. Wisner had been responsible for those, those acts can't by themselves, which is true in any criminal case other than, you know, like a traffic case, but the mental state required, the defendant would have to have known of and consciously disregarded the risk. You're mixing knowledge with recklessness. What's the definition of reckless, reckless, or acts recklessly? You take an action that knowing that there are risks, you still take the action. In the definition of recklessness in criminal code, where is the word knowledge or knowing? There has to be. It doesn't appear, does it? It doesn't appear in the criminal code. It doesn't appear in that definition. But a person acts recklessly when that person is, consciously disregards a substantial and unjustifiable risk that the circumstances exist or that a result will follow described in the statute defining the offense and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in that situation. But consciousness is inherent. With consciousness. Is an awareness. Is an awareness. She, in her own posts, she makes it clear that she was consciously aware that S was in. Yes, but she wasn't consciously disregarding risks. Consciousness can't exist. Even though you're absolutely correct, there is no word knowledge in recklessness. That's fundamental. Consciousness, you cannot have consciousness without some level of knowledge. And the important part, as the judge made very clear in his decision, is that consciously disregarding something that you knew was a problem, you can't, I don't know how, I don't know how you could, how, taking any example, how a person who consciously, how you can even have a thought that doesn't include the word knowledge when we're talking about consciousness. There's no, otherwise it would effectively eviscerate the requirement for a mental state. And the mental state that the legislature has decided to employ in the charge leading to the convictions in Count 789 is recklessness. There's no, I'm not aware of an example of a complete thought that could be given where consciousness is required, but some level of knowledge is not required. That's not consciousness. That would be automation. Counsel, you seem, in my mind, to have created an end to me. The premise that appears is in your syllogism is that your argument focuses on affirmative acts as opposed to non-affirmative acts, or put another way, the fact that she didn't do anything to remediate the situation, i.e., the way I'm interpreting your argument is that you can't have consciousness if you don't act. And the problem I have with that is most of her actions were inactions or non-actions. So your argument seems to address non-facts, which is what she did was mostly non-action, or she affirmatively supplied this child with crackers and apple juice. You can also look at it that she didn't give the child other things that the child's body needed. So are you arguing that consciousness can only be established by affirmative acts, or are you arguing that we can't take into account non-actions or inactions or negative responses to danger in order to affirm the trial court? I am absolutely not arguing that recklessness can only occur because of a—I'm trying to—I am not arguing that— I'll give you an example. There are reckless acts where you don't look both ways.  Okay? So in response to Justice Burkett's question, your response struck me as being, you can't find her guilty because she didn't do anything. And in order to find her guilty, you have to find that she shot a gun into the air or she slammed a door on someone's hand because she wasn't paying attention, that type of thing. Would you address more specifically my concern, which is when I read the briefs, it was like, there seems to be some inaction here that is highly unreasonable. I wasn't looking at giving the children crackers and apple juice. That's a typical snack at any time throughout the day, so that's not reckless. What's reckless is not giving them the food and nourishment that she didn't give them. And so I would like you to address what she didn't do and how that doesn't constitute reckless. I'm going to start here. For instance, in the hypothetical not looking both ways— Could you speak up a little louder? For instance, in the hypothetical not looking both ways before one crosses the street or one crosses an intersection. Einstein said that knowledge is knowing that it's a one-way street. Wisdom is still looking both ways anyway. And so— Sorry to interrupt, Judge. Were you done? Pardon? Were you done? Sorry. I was just trying to point out that there are nuances between what I thought you were arguing and what I'm seeking enlightenment upon. And I'm trying not to make this as esoteric as it apparently is coming across, but Einstein's quotes both imply knowledge, right? The knowledge is, you know, you're on a one-way street and the wisdom is still looking both ways, even though you're on a one-way street out of an abundance of caution. These are—you can't have a meaningful discussion about either of those quotes, in my opinion, and Ms. Wisner argues, without there being some presence of knowledge. To get back to this case, the providing of crackers and apple juice as being a snack, yes, she did those things. The failure to act was allegedly not giving the child meals. Throughout the record, it is replete with instances where the mother tried to provide other food to this six-year-old child. What foods were those? Oh, McDonald's. There were all sorts of preferences, and I can look and I can find the specifics. Her posts say that all she was eating—all S was eating was Cheez-Its and apple juice. That's because he had turned down the other options. And so when we talk about a— Does his turning down the other options excuse her behavior? There's no— Does that excuse a mother's behavior? To not feed a six-year-old child things that the six-year-old child is refusing? Yes. So I was about to make an illustration with a one- or a two-year-old child who doesn't have free will, or free will that's very easily limited and controlled by a parent or an adult. May I finish my thought? Yes. You can essentially—you can force a baby to eat or not—a baby will choose not to eat, but then I think it is fair to say that somebody would immediately give an infant to a medical provider to say, look, the food isn't literally going down the hatch, right? A six-year-old child who has more than a modicum of self-awareness and free will can much easier refuse other foods. I don't think it's a question—and I'm trying not to—I'm not trying to be disrespectful or dismiss your question, Judge. I would say to answer your question, does it excuse what Ms. Wisner did? I would flip that and I would say, has the state proven it beyond a reasonable doubt? Based in part on that child's free will, that child's exercise of his own bodily integrity, does that rise to the level of evidence that the state has proven the defendant beyond a reasonable doubt guilty of Counts 7 through 9? What factual determinations by the trial court were against the manifest weight of the evidence? The bootstrapping in the court's pronouncement of her finding of guilt in Counts 7, 8, and 9, which wasn't necessary bootstrapping to say that things were self-evident. That removes—it essentially and it effectively removes the burden of the state to prove any mental state, including recklessness. Would you agree that upon review we are supposed to determine whether or not the rationale given that the child refused all other forms of nourishment is either one or both, possibly? It's a reason, but it's not an excuse. I'm suggesting to you the inference that I get from the concept of saying what she said, is that she's raising her child based upon what her child wants. And any parent knows—well, almost every parent knows that you don't do that, because, for one thing, if they haven't gotten enough sleep, they're so irrational they don't know what they want. And you just let them, you know, rant, cry, whatever. So when she says the things she says, either orally or through digitized social media, the question—and I'm looking to see if you agree with me—is we're supposed to determine whether or not the reasons that she was giving were reasons or excuses. And when I say excuses, I mean excuses that would absolve her from the criminality that she was charged with. And I don't think Ms. Wisner was making excuses for the same reason, that I don't believe— No, I didn't think she was either. I think she was making statements. But the question is, your argument to us is, it was an excuse because she's not guilty, because it couldn't be a conscious disregard. And so if it's not a conscious disregard, what is it? It's an excuse. It's a rationalization for action or non-action. And I think for any rationalization for a reason or for an excuse, again, I just—I don't—I can't— I'm not asking for an admission. I'm asking for your concession that we are supposed to determine whether or not there were reasons or excuses for what she did that would exonerate her and require reversal. There were reasons for what she—yes, she had reasons for what she did. Yes. Okay. You said—you'll have an opportunity to make a follow-up. Thank you. Thank you, Your Honor. Mr. Boos, is it Boos? Boos, yes, Your Honor. You may proceed. Thank you. And may it please the Court? Counsel. For years, defendant malnourished the victim to the point where a proper diet risked killing him. As such, the sentence and judgment were proper. Now, to clarify one point from defendant's argument, defendant did not provide the crackers and juice exclusively to the defendant as a snack. That was his diet. Since it was, she was obligated to seek medical attention and obtain the very therapies and treatments that did treat the victim and did allow him to survive it and very eventually, despite defendant's actions, thrive. Given the height of these stakes, the law penalizes her actions appropriately. Because of defendant, the treatment that the victim received was complex. However, the need for that treatment was abundantly obvious. The people invite you to look at the pictures of the victim in the hospital after he had been subject to her care or lack thereof. Now, the people are not requiring that defendant has a medical degree in order to determine that a diet of crackers is not enough. Moreover, defendant's statements herself show that she was aware that it wasn't. Despite this, for years, she failed to seek attention, necessary life-saving attention. Now, the physical description shows that the evidence was sufficient to reach the level of a conscious disregard of a risk. Here, the pictures again in the obvious show the obvious need for medical attention. Counsel, do you think that the photographs of the child or seeing the child personally would be sufficient evidence based upon the doctor's testimony regarding what the view or what you were seeing was? Would that be sufficient without expert opinion as to whether or not she was guilty of the offenses beyond a reasonable doubt? In other words, could layman look at what this child presented and determine that this was so egregious or sufficiently egregious or reckless that in a layman's opinion and not the allegedly required or possibly required expert opinion of doctors? Yes, Your Honor. It was abundantly obvious from looking at the victim, let alone being in a position of being the victim's primary caregiver. If you see that victim, if you look at how atrophied the victim's legs are, if you look at the distended belly, the sores all over his body, the way his hair is thinning, even balding at this young age, the rotten teeth inside of his mouth and the swelling and sores, I apologize if I repeat myself, but yes, based on the physical appearance alone, defendant was obligated to do something to try to find a way through medical experts something to make sure that the victim was able to live and failed to do so. Is it possible to, well, everything is possible theoretically, but is it appropriate for us to determine that the convictions, at least one of which or two of which should be overturned, but because of the sentences of concurrent three years, that we would still affirm the three-year sentence? She was individually convicted. Each of the sentences were concurrent, and so the fact that one goes away does not affect the ultimate sentence. So the point is you have to find her not guilty of all charges in order to allow her to be released from prison? Correct, though to be clear, people stand by each individual conviction based on the evidence, including defendant's own statements, reflecting not only her awareness that he needed medical attention, that he required some kind of intervention, but also that it was directly tied to his malnutrition. Is there any evidence in the record supporting the testimony of the defense expert, Dr. Byock? Well, part of his testimony is the defendant was aware of the need for intervention, so certainly that's supported, Your Honor. However, the points of disagreement or dispute with the experts, first of all, that's for the court to determine. That's why we have a finder of fact, and so it shouldn't be reversed just at the whim of review on appeal. But those statements where he tried to lay the blame functionally at the victim's feet for having behavioral issues are all rebutted by the very evidence in this case of the victim's ability to eat, to receive nutrition, to take the treatments and the individual processes that the providers gave and tried to show defendant, and she refused to incorporate them or allow the doctors to intervene in order to save the victim's life until she risked DCFS and criminal reprisal. Byock was the defendant's expert, was the witness qualified to give opinions upon child behavior and the nature and extent of child behavior that, pursuant to the ultimate question in the case, which is criminality, that he could or did actually opine on the ultimate issue and not just the issues relating to medical testimony, causation, effect, and so on. Do you see where I'm going or not? I think so, Your Honor. I'm suggesting to you that if the doctor is rendering opinions about child behavior, is that within the realm of his ability to opine to the extent that he's now opining on the reason and attempting to claim that the reason is an excuse? Within two spheres. First, Your Honor, he's allowed to opine to medical testimony, and saying whether or not the victim has behavioral issues that might relate to the ability to eat, that is the subject of expert testimony. Numerous experts by the prosecution testified to that as well. However, asserting that the victim could not, that these behavioral issues were established and, moreover, excuse her, that does go outside of what his expertise permits. While there can be testimony by experts on the ultimate conclusions, they have to be rooted in the evidence, and they have to not just, and they have to be rooted in the scope of the expertise. So for that. Would it be correct to suggest that the trier of fact would have the ability and authority and the discretion to weigh the credibility of all the witnesses' testimony? And if they determined that, for instance, this particular expert's testimony was not credible, that they would not then necessarily have to determine that the actions or non-actions by the child would be an appropriate legal excuse? Yes, Your Honor. That's what the court was obligated to do here and stated that it did so. Again, it reflected on the credibility determinations that underpinned its judgment, and it explained how it reached that judgment in fairly extensive detail. When it reached this conclusion that defendant consciously disregarded a risk, it did incorporate all of that testimony, and the testimony was at odds. This is not new. Experts can disagree on points of care, on what is appropriate on how people should have acted. That happens in court every day, and that's why we have the level of deference to the credibility definings below, because the trial court was able to look at the experts' testify, able to weigh not just their own statements, but compare their demeanors against each other. Including all the circumstantial evidence. Absolutely. And I cannot stress enough how thoroughly the circumstantial evidence and frankly direct evidence of her mental state do matter. In January 2017, she was told by a doctor to avoid processed foods. A year later in January 2018, that's all that the victim was getting. She stated he lives on Cheez-Its and M&Ms. In January 2020, two years later, she reflected that he would be six but was three to four, before immediately tying that to his diet, saying that he only eats crackers and candies and juice. Less than a year later, he is seen in the hospital, his teeth are rotting out of his head, and his bones are so porous that they're barely visible on an x-ray. Is it osteoporosis? Osteopenia, I believe, was the diagnosis, Your Honor. But it was such a severe demineralization, in the words of the expert, that the victim could feel his bones breaking. On August 27th through 30th of 2020, in addition to again reflecting on the victim's inadequate diet, the defendant stated that the victim was stating he felt like he was going to crack. There was expert testimony specifically on that point, saying that was accurate. The victim was feeling his own bones break a little. And that cannot be not enough to show she was consciously disregarding these risks. When she's talking about his diet, when she is laughing it off in her own comments, when on January 7th, 2020, she notes the victim's inadequate diet, she links it to his underdevelopment, and then she says, LOL. This is 10 months before the victim is hospitalized, and she's making light of the severe and obvious, wasting away that the victim is facing. And so to say that this evidence is insufficient to show her conscious disregard of a risk of harm, based on this statement alone, frankly, but in addition to the wealth of evidence in the record, the burden has been established here. Rather, the conviction should be affirmed. The defendant has not carried her burden of showing that it should be overturned. And just so it's not lost, the standard is not simply whether or not the evidence on its own is sufficient to prove beyond reasonable doubt. It is all construed in the light most favorable to the prosecution. That's what we do on sufficiency of the evidence claims. And frankly, defendant's claims are all based on trying to construe the evidence in her favor. She doesn't get to do that. Now, as to the conscious disregard, pardon me, that was related to the January 7, 2020, comment. One further point on the sufficiency of the evidence, however, is that the effects of the case show that when the victim was taken from defendant's care, when the defendant actually did receive the medical attention that was obviously needed, the victim did improve. The term I was looking for before was therapies. Was the word thrive? Yes. Eventually. To me, your argument that he improved doesn't necessarily give full shrift to, I think, the description of what happened. Improvement is qualitative. Thriving is quantitative. Was there not testimony that he thrived? Yes, that when he was placed in proper care, received the therapies he needed, the nutrition that he had been so fundamentally lacking, that he began engaging with other people more effectively. He very eventually developed healthy attitudes towards food, was able to eat everything. In stark contrast to his initial admission where he, I believe the expert stated, had virtually every diagnosis for malnutrition that was possible. Scurvy, rickets, anemia. This child was not getting anything that he needed. And it was obvious. The defendant also challenges a sentence. Counsel didn't address it. But was the challenge to the sentence preserved? No. Not at all. And further, the defendant has not attempted to provide an avenue to reach even plain error. In the opening brief, in the reply, or during the first argument, 341H7 says, since there is a failure to raise that, then it is forfeited. So while without forfeiting my own argument that the sentence was absolutely appropriate, both the forfeiture, failure to assert plain error, and the Fouch issue from failing to provide the factual basis for the sentence, all of that overrides any argument on the second issue as well. The defendant's lack of care would have caused the victim a slow, painful, preventable death. Her statements show the conscious disregard of a note. May I finish up? You can close. Thank you. Her statements show that she disregarded a substantial risk of harm that she was aware of. And so the people asked you to look at the pictures, review the description of the profound and obvious malnutrition the victim faced, and affirm defendant's judgment in the sentence. Any questions? Thank you. Thank you. Mr. Caber, you may proceed with rebuttal. Yes. And the people's argument largely mirrors its response brief, that everything was obvious, that it was abundantly obvious, that it was readily apparent, the osteopnea, the being able to see through, nearly see through on x-rays, the child's bones, that it's obvious. The danger here, and what Ms. Wisner is arguing, is the danger is that simply reciting the facts, which we're not taking issue with how those facts were presented in the trial court. In other words, we are not asking this court to retry the defendant. We understand, and I don't believe we are asking the court to construe the evidence in any manner, either for or against the state. Obviously the facts do have to be taken in the light most favorable to the state. What we're saying is even with these facts, however the court considers them, that doesn't, the mere presence of facts that are, if somebody could even imagine worse facts than the situation as it was presented at the trial here, that doesn't absolve the state from what we were discussing earlier in my presentation, which is bad facts don't absolve the people from having to prove a mental state beyond a reasonable doubt. This is a situation where a lay person who had, among other situations, a child who wasn't going to eat what was being provided to her, and then on the other hand for the state to say, well, look at the therapies that were provided, the child was eating everything, he was a perfect kid. What evidence was missing? What more could the state have presented? In terms of to present facts that the child was... You're arguing they did not establish recklessness beyond a reasonable doubt. What's missing? The conscious disregard by the mother. That is what, that is one element... She was told not to feed him a meal of crackers and juice. She was told that. Yet she persisted. And I... He needed nutrition, but she didn't provide it. She didn't provide it, he wouldn't accept it. There's a... And there's no... You're suggesting that there's no alternative then? You don't call a doctor? You don't admit the child to a hospital? The conscious disregard of a known risk, which is what... Excuse me. It does seem to me that you're asking us to re-weigh the evidence. And really your burden here is to show that insufficiency is a tough one, to show that looking at the evidence, it might be most favorable to the state that nothing supports the trial court's verdict, but there's quite a bit where Justice Burkett pointed out the... And I'll call on the pediatrician, I'm not sure, that said no more junk food. Then someone recommended intervention. Didn't the mother say, I'd rather have him close to home? And then you said to his specialist, he wanted testing and further specialists, and he never heard back from her. The care... She had other children. They appeared to thrive. Isn't that knowledge that a child, you know, when their feet start to curve in, when their hair starts to fall out, when their skin begins to crumble, that their teeth rot out of their head at that tender age? And you focus on six, but it's really four to six based on my review of the record. And I don't see you arguing the real point, which is that nothing supports Judge Coppedge's verdict. You're telling us we should accept arguments that would be perfectly appropriate to a trial court, but you're not in a trial here. This is an appellate court. And I think this... I'm concerned about that. If you want to address that, I can. And I think, you know, the difference between a jury verdict and the court's verdict at a bench trial is that the jury verdict isn't explained. Here, Judge Coppedge goes in detail and explains the reasoning for his finding of guilt on the counts of conviction. Those, even in the finding of Count 789, he calls it obvious. If the... May I finish? Yes. If your Honor's question is meant to address, okay, we have the facts here, and therefore the facts must give rise to the mere fact that those facts existed and the mother observed the symptoms of the child, that that automatically causes a conscious disregard, that is what I... That is our argument, that that knowledge and that mental state of recklessness has not... is the element that hasn't been proved. The element that she didn't provide medical care, that she didn't provide nutrition, those are the acts or inactions that were alleged by the state, and Ms. Glisser's argument is that the mental state was lacking and was not proved beyond a reasonable doubt. Any questions? Did you hear Mr. Booz suggest that the evidence indicated that the child was malnourished in every category that would apply to someone his age? I did. Pardon? I did. Is that accurate? I'm not asking you if it's true. I'm asking you if the evidence was presented in an opinion or an observation that someone said what he related just now. I can't recall specifically. Okay, well, where I'm going with this is if this were a concentration camp and a child was taken from that camp and examined and every aspect of malnourishment was determined in the affirmative, would you still be arguing that the prison guards should not be found guilty because they didn't have the necessary conscious awareness that what they were doing to that child was wrongful? If they did not have a conscious disregard for something that they knew was a risk, I would be making the same argument that I'm making with regard to Ms. Wisner. So all we really have to do is determine whether or not she had a conscious disregard or not. That is the mental state, so yes.  So if the evidence is manifest, we affirm, correct? Ms. Wisner is asking for this Court to reverse on all three counts for the reason that a mental state was not proved beyond a reasonable doubt, which was evidenced by the trial court's decision when it pronounced it on the record. Okay. Any other questions? No. Thank you. We'll take the case under advisement. There's one more case on the call. The Court's in recess. All rise.